FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 27, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELIA R.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  1:19-CV-03041-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

        BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 14, 15.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).2

ORDER ~ 1

represented by Special Assistant United States Attorney Lars J. Nelson.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 14, is granted and Defendant's Motion, ECF No. 15, is denied.

## JURISDICTION

Plaintiff Selia R.[2] (Plaintiff), filed for supplemental security income (SSI) on January 9, 2013, alleging an onset date of October 1, 2010.[3]  Tr. 290-95.  Benefits were denied initially, Tr. 155-63, and upon reconsideration, Tr. 167-75.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on May 27, 2015.  Tr. 44-81.  On July 17, 2015, the ALJ issued an unfavorable decision, Tr. 120-42.  On February 23, 2017, the Appeals Council vacated the ALJ's decision and remanded for reconsideration.  Tr. 143-48.

Plaintiff appeared at a second hearing before the ALJ on June 13, 2017.  Tr. 859-82.   On April 25, 2018, the ALJ issued another unfavorable decision, Tr. 12-35.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[3] Under Title XVI, benefits are not payable before the date of application.  20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

and on January 9, 2019, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 47 years old at the time of the second hearing.  Tr. 861.  She went to school through the ninth grade.  Tr. 75, 505.  She tried to get a GED several times but was not able to pass all portions of the test.  Tr. 75.  She has work experience as a cleaner, kitchen helper, and agricultural produce sorter.  Tr. 875.

At the first hearing, Plaintiff testified she has carpal tunnel syndrome, insomnia, anxiety, depression, back pain, and thumb pain.  Tr. 58-60.  She had surgery on both hands which relieved some numbness but overall did not improve her pain.  Tr. 58-59, 870-71.  At the second hearing, Plaintiff testified she cannot stand for more than 15-20 minutes due to back pain.  Tr. 872.  She does not like being around people and has panic attacks.  Tr. 874.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

ORDER ~ 3

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

ORDER ~ 4

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER ~ 5

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant

ORDER ~ 6

is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 9, 2013, the application date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following medically determinable impairments:  obesity, status-post thoracic spine fracture, carpal tunnel syndrome, trigger finger, depressive disorder, and anxiety disorder.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant is capable of performing unskilled, repetitive, routine tasks in two-hour increments.  She can have superficial, incidental contact with [the] public and occasional contact with co-workers and supervisors.  The claimant can occasionally stoop, squat, crouch, crawl[], kneel, and climb ramps and stairs.  She cannot climb ropes,

ORDER ~ 7

ladders, and scaffolds.  The claimant can occasionally reach, handle, and finger with the dominant right upper extremity and frequently reach, handle, and finger with [the] non-dominant left upper extremity.  The claimant will be provided with clear, straightforward tasks at work.

Tr. 21.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 27.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs existing in significant numbers in the national economy that Plaintiff can perform such as laminating machine offbearer or bakery conveyor line worker.  Tr. 27-28.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 9, 2013, the date the application was filed.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for review:

1.    Whether the ALJ failed to properly develop the record regarding Plaintiff's IQ;

2.    Whether the ALJ properly considered Plaintiff's symptoms claims;

3.    Whether the ALJ properly considered the medical opinion evidence; and

4.    Whether the ALJ made a proper step five finding.

ORDER ~ 8

ECF No. 14 at 2.

## DISCUSSION

### A.     Duty to Develop the Record

Plaintiff contends the ALJ should have developed the record by obtaining an IQ test in order to properly evaluate Plaintiff under listing 12.05.  ECF No. 14 at 3-4.  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence to resolve an inconsistency in the evidence when the evidence is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. §§ 416.917, 416.919a, 416.920b(2).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).

Listing 12.05 for intellectual disability "is based on the three elements that characterize intellectual disorder: [s]ignificantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00B(4).  Significantly subaverage general intellectual functioning may be established by a

full scale IQ score of 70 or below or a full scale IQ score of 70-75 with a verbal performance IQ score of 70 or below.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.05B.

Plaintiff contends the ALJ should have obtained IQ testing for consideration under listing 12.05B based on several factors:  she testified that she was in special education, left school in the tenth grade, and failed to obtain a GED after several attempts, Tr. 75; Dr. Haloman's exam findings and conclusion of "suspect borderline intellect," Tr. 623-24; Dr. McClelland's opinion that Plaintiff appeared to be cognitively impaired, Tr. 508; and Dr. Kraft's finding of severe borderline intellectual functioning, Tr. 110.  ECF No. 14 at 4.

At the 2015 hearing, Plaintiff's representative requested IQ testing.  Tr. 80.  In response, the ALJ said, "[t]here's been testimony at the hearing that goes to her adaptive functioning, her ability to work at - - you know, on a limited basis at times, as well as her ability to run her household with a lot of kids.  Your request is denied.  There is not sufficient showing that her adaptive functioning is deficient enough . . . that it would not counter balance the results of an IQ test, even if it came out below normal."  Tr. 80.

Plaintiff contends the ALJ's point is unclear and does not establish a lack of deficits in adaptive functioning under listing 12.05B.  ECF No. 14 at 4.  "Adaptive functioning" refers to how the claimant uses conceptual, social, and practical skills in dealing with common life demands and involves the claimant's typical functioning at home and in the community, alone or among others.  Under

ORDER ~ 10

12.05B(2), significant deficits in adaptive functioning are identified based on whether there is extreme limitation of one, or marked limitation of two, of the paragraph B criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00H(3)(a). The ALJ explained in detail the B criteria findings that Plaintiff's mental impairments do not cause at least two marked limitations or one extreme limitation. Tr. 20. Plaintiff does not address these findings. Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's finding that deficits in adaptive functioning are not established by the record is supported by substantial evidence. The ALJ's statement that the results of IQ testing would not impact the outcome of the step three finding is therefore correct. Thus, ALJ did not err by failing to develop the record with IQ testing.

**B.     Symptom Testimony**

Plaintiff contends the ALJ improperly rejected her symptom testimony. ECF No. 14 at 17-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834

(1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he

ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

ORDER ~ 12

First, the ALJ found the medical evidence does not substantiate Plaintiff's allegations of disabling limitations. Tr. 22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ discussed the evidence regarding Plaintiff's physical condition in detail. Tr. 22-33. For example, regarding Plaintiff's back pain, the ALJ noted that in April and May 2015, findings of tenderness to palpation, decreased range of motion, or spasms were recorded, but there were no deficits of gait or function noted and treatment was conservative. Tr. 22, 853, 856. In July 2015, exam findings included normal upper and lower extremity range of motion and normal back range of motion, and Plaintiff drove to treatment and ambulated without assistance. Tr. 22, 788-90, 795. Regarding carpal tunnel syndrome, the ALJ discussed the record leading to right carpal tunnel release surgery and a left thumb injection in January 2015 and subsequent improvement, Tr. 821, 856, and left carpal tunnel release and right middle finger injection in November 2016 and subsequent improvement, Tr.

809, 842.  Tr. 23.  The ALJ also noted other exam findings indicating her

functioning is not as impaired as alleged.  Tr. 23, 763, 812, 814-15, 834, 846.

Plaintiff cites her physical symptoms and presentation mentioned throughout

the record but fails to demonstrate how the ALJ's interpretation of the record is

incorrect.  ECF No. 14 at 17-18.  The ALJ acknowledged Plaintiff has some

limitations and included those limitations reasonably supported by the record in the

RFC.  Tr. 21.  To the extent the record could be interpreted differently, it is the

ALJ's duty to resolve conflicts in the evidence.  *See Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Thus, the ALJ's interpretation of

the evidence is reasonable and supported by substantial evidence.

The ALJ also discussed the medical evidence regarding Plaintiff's mental

health.  Tr. 23-24.  The ALJ noted some symptoms such as sleep problems, racing

thoughts, nightmares, and situational stressors, but observed the record reflects

sporadic treatment indicating her symptoms are not as persistent or limiting as

claimed.  Tr. 24, 854.  The ALJ noted findings such as a January 2015 record

indicating that Plaintiff was fully oriented, showed appropriate mood and affect, had

and had normal judgment and memory, which the ALJ observed are inconsistent

with the limitations alleged.  Tr. 24, 825.  In April 2015, Plaintiff had good eye

contact with flat affect and slow speech, but in July 2015 it was noted that Plaintiff

had normal affect, normal speech, and was fully oriented, and in October 2016 she

had normal memory, appropriate judgment, and appropriate mood and affect.  Tr.

24, 788, 815, 856.  The ALJ acknowledged Plaintiff's symptoms wax and wane, but that her baseline functioning is not as limited as alleged.  Tr. 24.

The ALJ also observed that Plaintiff's mental health declined after the death of her daughter in 2017.  Tr. 24.  She sought treatment for her symptoms of depression, nightmares and insomnia in July 2017.  She presented with a flat affect and avoided eye contact and was found to have depression, anxiety and grief, but her symptoms were characterized as mild to moderate and functional impairment was noted but not specified.  Tr. 24, 833-35.   The ALJ concluded that overall, the record shows that Plaintiff's symptoms, even during periods of intense grief, do not cause the debilitating limitations she alleges.  Tr. 24.

Plaintiff contends the ALJ failed to consider her barriers to mental health treatment.  ECF No. 14 at 19 (citing Social Security Ruling 16-3p).  Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Plaintiff cites her symptoms, ECF No. 14 at 19, but there is no evidence that any medical or mental health provider identified these symptoms as barriers to treatment.  When there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina*, 674 F.3d at 1113-14.  Thus, the

ALJ's consideration of the mental health record is reasonable and supported by substantial evidence.

Second, the ALJ found Plaintiff's reported activities indicate that she is not as limited as alleged. Tr. 24. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted Plaintiff testified that her older children help care for the younger children and do a lot of the household chores, so she does not do chores or cook very much. Tr. 24, 867-68. The ALJ found this testimony is undermined by Plaintiff's report of being the primary caregiver for her children. Tr. 24, 670. In October 2016, Plaintiff reported a normal activity level and did not complain of any

functional limitations.[4]  Tr. 24, 843.  The ALJ also noted that in April 2017, Plaintiff reported having three young children at home and performing normal housework, which reasonably contradicts her testimony that her children perform most of the household chores.  Tr. 24, 841.  Plaintiff testified she takes her nine-year old to son to therapy and attends his school meetings, drives, and shops at Walmart regularly.  Tr. 24, 862-63.  The ALJ reasonably concluded this evidence contradicts Plaintiff's alleged limitations and indicates that her symptoms do not cause the extreme limitations of daily and social functioning which she alleges prevent her from working.  Tr. 24.

The ALJ also found that Plaintiff's claims of debilitating pain and physical limitations are also undermined by an emergency room record indicating Plaintiff reported shoulder pain after moving a mattress.  Tr. 24, 762-63.  Plaintiff argues this only demonstrates that she attempted an activity beyond her capacity.  ECF No. 14 at 20.  However, the ALJ observed that Plaintiff did not report back pain or concerns about carpal tunnel syndrome which might reasonably be expected given the disabling limitations alleged, and that moving a mattress is inconsistent with

---

[4] Plaintiff observes that at that appointment she complained of neck pain which worsened when she turned her head, ECF No. 14 at 19, but the doctor treated Plaintiff only with osteopathic manipulation and did not place any restrictions or identify any limitations which is consistent with the ALJ's finding.  Tr. 843.

Plaintiff's alleged limitations on lifting, upper extremity function, and mobility.  Tr. 24, 762-63.  The ALJ's finding regarding Plaintiff's activities is clear and convincing and supported by substantial evidence.

Third, the ALJ found Plaintiff has chosen not to work.  Tr. 24.  An ALJ may draw reasonable inferences regarding a claimant's motivation to work.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).  The ALJ noted Plaintiff described herself as a stay-at-home mother living with eight children in December 2014, and that she told a provider in July 2017 that she relies on her children's Social Security income and other benefits for support for her herself and her younger children.  Tr. 24, 670, 838.[5]  However, neither of these records indicates or implies that Plaintiff "chose" to care for her children rather than work.  There is no information in either record to support any conclusion about Plaintiff's intent or motivation regarding work.  This is not a clear and convincing reason supported by substantial evidence.

Fourth, the ALJ found Plaintiff exaggerated her symptoms in order to get pain medication.  Tr. 25.  An ALJ may reject a claimant's testimony if there is evidence of a tendency to exaggerate symptoms.  *Tonapetyan*, 242 F.3d at 1148.  The ALJ

---

[5]The July 2017 record actually states that Plaintiff was "relying on older kids' income and support while she takes care of herself and her younger children" and does not mention relying on her children's Social Security or benefits.  Tr. 838.

cited records from July 2017 indicating Plaintiff presented to the emergency room with epigastric pain.  Tr. 25, 737-40.  A CT scan showed no inflammatory process and no cognitive or functional deficits were noted.  Tr. 25, 739-40, 752.  Plaintiff was "swearing at staff because she [wanted] pain medication," and "spent the entire visit moaning and hunched over," but when she was told she would not be getting pain medication because she did not need it, "she quit moaning and stood straight up, ripped off her gown and threw it across the room while swearing, and then walked out with her family member."  Tr. 739.  The ALJ concluded this incident indicates Plaintiff has exaggerated her symptoms.  Tr. 25.

Plaintiff contends the hospital record is internally inconsistent since it was noted 03:52 that the doctor did not order pain medication because "medically, she didn't need it and she needed to discuss that with her PCP," but the record also indicate Dilaudid was administered at 00:47.  ECF No. 14 at 21; Tr. 739.  However, the emergency room note states the doctor was aware of Plaintiff's later requests for pain medication and did not order any.  Tr. 739.  Later that day, physician assistant Calhoun indicated Plaintiff's use of alcohol should not be mixed with a narcotic prescription and opted to "treat with supportive care."  Tr. 837.  The ALJ's interpretation of this incident was reasonable.  In combination with the ALJ's other findings, this reasonably supports the ALJ's conclusion that Plaintiff's limitations are not as extreme as alleged.

**C.    Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of examining psychiatrist Elsa Haloman, M.D.; examining physician Jesse McClelland, M.D.; Gabriela Mondragon, MSW; and Emily Shoemaker, LMFP.  ECF No. 14 at 8-17. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or

psychologist, is given more weight than an opinion from a source who is not an

acceptable medical source or who is a non-medical source. 20 C.F.R. § 416.927;

*Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see* 20 C.F.R. § 416.902

(acceptable medical sources include licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, qualified speech-language

pathologists, licensed audiologists, licensed advanced practice registered nurses, and

licensed physician assistants).[6] However, an ALJ is required to consider evidence

from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f).

The ALJ is required to consider evidence from non-acceptable medical sources but

may discount testimony from these sources if the ALJ "gives reasons germane to

each witness for doing so." *Molina*, 674 F.3d at 1104.

---

[6] Effective March 27, 2017, the definition of an "acceptable medical source"

changed to include some sources which were previously not acceptable medical

sources. *See* 20 C.F.R. § 416.902. However, for licensed audiologists, licensed

advanced practice registered nurses, and licensed physician assistants, the change

applies "only with respect to claims filed . . . on or after March 27, 2017"). 20

C.F.R. § 416.902(a)(6)-(8).

ORDER ~ 21

### 1. Elsa Haloman, M.D.

In September 2013, Dr. Haloman examined Plaintiff and diagnosed depressive disorder and anxiety disorder and indicated she suspected borderline intellect.  Tr. 618-25.  Functionally, Dr. Haloman opined that Plaintiff can perform simple and repetitive tasks; she cannot accept instructions from supervisors and would benefit from very clear and simple instructions; she can interact with coworkers and the public; she cannot perform work activities on a consistent basis without special or additional instructions; she may need more supervision as she seems to have difficulty performing tasks independently; she can maintain regular attendance in the workplace and complete a normal workday without interruptions due to a psychiatric condition; and she can deal with the usual stress encountered in the workplace.  Tr. 624.  The ALJ gave little weight to Dr. Haloman's opinion.

First, the ALJ found Dr. Haloman's opinion is based on a brief one-time exam and limited records review.  Tr. 26.  While the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is a relevant factor in weighing a medical opinion, the opinions of examining physicians and psychologists should not be dismissed on that basis.  20 C.F.R. § 416.927; *Lester,* 81 F.3d at 830.  This is not a specific, legitimate reason for giving little weight to Dr. Haloman's opinion.

Second, the ALJ found Dr. Haloman's conclusions regarding Plaintiff's need for additional supervision are inconsistent with her exam findings and the record as a whole, and that Dr. Haloman's assessment is therefore based on Plaintiff's

ORDER ~ 22

unreliable subjective allegations.   Tr. 26.   An ALJ may discredit a physician

opinion that is unsupported by the record as a whole or by objective medical

findings, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

2004), or an opinion that is based on a claimant's subjective complaints which

were properly discounted.   *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at

599; *Fair*, 885 F.2d at 604.   However, when an opinion is not more heavily based

on a patient's self-reports than on clinical observations, there is no evidentiary

basis for rejecting the opinion.   *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc.

Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

        As an example, the ALJ contrasted Dr. Haloman's note that Plaintiff has

"very poor distress tolerance" with her observation that Plaintiff was pleasant and

cooperative on exam.   Tr. 26, 621, 623.   It is not apparent how poor distress

tolerance is contradicted by a pleasant and cooperative demeanor and, as noted by

Plaintiff, Dr. Haloman's notation was a reference to Plaintiff's "history of very

poor distress tolerance" contained in the medical record.   Tr. 623; ECF No. 14 at 9-

10.   Furthermore, notwithstanding Plaintiff's history of very poor distress tolerance

and regardless of the source of that information, Dr. Haloman found that Plaintiff

could handle the ordinary stress of the workplace.   Tr. 624.   Thus, this example

does not reasonably support the ALJ's conclusion that Dr. Haloman relied on

Plaintiff's statements regarding stress tolerance.

        As another example, the ALJ found that Plaintiff's statements that she

spends most of her time caring for her children indicates that "she is able to spend

ORDER ~ 23

extended periods of time engaging in a variety of tasks without additional, repeated instruction." Tr. 26. However, Dr. Haloman indicated that the limitations requiring additional repeated instruction are based on the mental status exam findings which include findings such as, "I had to repeat multiple times how to do the tasks during this interview. She needed a lot of prompting and redirection, and really seemed to have difficulty understanding instructions." Tr. 624. Dr. Haloman reported that during memory testing, "I had to explain the instructions three times in various ways" and Plaintiff still performed incorrectly. Tr. 622. Similarly, Dr. Haloman observed, "she seems to have difficulty performing tasks independently." Tr. 624. This indicates that Dr. Haloman's opinion is based on her findings, not on Plaintiff's self-report. The ALJ's reasoning is not supported by substantial evidence and this is not a specific, legitimate reason for giving less weight to Dr. Haloman's opinion.

Third, the ALJ found Dr. Haloman's opinion is internally inconsistent because the limitations assessed contradict the assessment of a GAF score of 65. Tr. 26. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan*, 169 F.3d at 598. A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the

ORDER ~ 24

household), but generally functioning pretty well and having some meaningful

interpersonal relationships.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL

DISORDERS, at 32 (Am. Psychiatric Ass'n 4th ed.) (1994).

However, the Commissioner has explicitly disavowed use of GAF scores as

indicators of disability.  "The GAF scale . . . does not have a direct correlation to

the severity requirements in our mental disorder listing."  Revised Medical Criteria

for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-

01, 50764-65 (August 21, 2000).  Moreover, as noted by the ALJ, the GAF scale is

no longer included in the DSM–V.  DIAGNOSTIC AND STATISTICAL MANUAL OF

MENTAL DISORDERS (Am. Psychiatric Ass'n 5th ed.) (2013); Tr. 27.  In fact, the

ALJ concluded that "the GAF scores in the record do not convey information that

furthers the functional analysis."  Tr. 27.  While the ALJ applied this conclusion to

GAF scores ranging from 17-50, the ALJ should have applied it to all GAF scores

in the record.  This is not a specific, legitimate reason for giving less weight to Dr.

Haloman's opinion.

Fourth, the ALJ found that Dr. Haloman did not provide an objective basis

for diagnosing "suspect borderline intellect."  Tr. 26.  An ALJ may discredit

physician opinions that are unsupported by the record as a whole or by objective

medical findings.  *Batson*, 359 F.3d at 1195.  The ALJ observed that Dr. Haloman

did not formally test Plaintiff's intellectual functioning.  Tr. 26.  While the ALJ is

correct that no formal cognitive testing was administered, the suspicion of

borderline intellect is based on Dr. Haloman's mental status exam findings which

ORDER ~ 25

indicated issues in nearly every category of intellectual functioning.  Tr. 622-23.

Dr. Haloman concluded, "[d]uring my cognitive testing today she seemed to have a

very poor fund of knowledge, was concrete and quite simple, and seemed to

struggle with basic tasks that were asked of her.  She did not complete her

education, but I suspect she may have borderline intellect (It is my understanding

that she has not had a formal assessment of this)."  Tr. 623-24.  Contrary to the

ALJ's finding, Dr. Haloman's suspicion of borderline intellect is based on some

objective findings.  Thus, the ALJ's conclusion is not supported by substantial

evidence and this is not a specific, legitimate reason for rejecting Dr. Haloman's

opinion.

### 2.  Jesse McClelland, M.D.

In May 2011, Dr. McClelland examined Plaintiff and diagnosed major

depressive disorder and posttraumatic stress disorder.  Tr. 504-08.  Dr. McClelland

opined that Plaintiff seemed cognitively impaired based on the exam and that

functionally, she should be able to perform simple and repetitive tasks but complex

tasks would be difficult; she is impaired in her ability to accept instructions from

supervisors; she is impaired in her interactions with coworkers and the public; she

would struggle to perform work activities on a consistent basis without special or

additional instruction; she would struggle to maintain regular attendance and

complete a normal workday and work week without interruptions from PTSD; and

her productivity would be significantly diminished due to her cognitive speed.  Tr.

508.  The ALJ gave little weight to Dr. McClelland's opinion. Tr. 26.

ORDER ~ 26

First, the ALJ noted Dr. McClelland's opinion is based on a single exam conducted for a prior disability claim and was considered in the adjudication of that period, and the exam predates the period under consideration.[7]  Tr. 26.  The regulations suggest that medical opinion evidence predating the claimant's filing may be relevant.  *See* 20 C.F.R.§ 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.").  Furthermore, Defendant does not defend this finding but argues the error is harmless based on a discussion of the evidence not made by the ALJ.  ECF No. 15 at 13-14.  This not a specific, legitimate reasons supported by substantial evidence.

Second, the ALJ found that Dr. McClelland's opinion is inconsistent with more recent medical evidence and Plaintiff's functioning, with Plaintiff's reported functioning, and with evidence added to the record after the prior decision.  Tr. 26.

---

[7] The ALJ incorporated by reference the reasons for rejecting Dr. McClelland's opinion stated in the 2015 decision.  Tr. 26.  These reasons include that it is an "old opinion" and inconsistent with more recent evidence in the record such as Plaintiff's testimony and self-report and the opinion of Dr. Haloman.  Tr. 134.  These are essentially the same reasons discussed in the current decision.

However, the ALJ did not identify which evidence is inconsistent with Dr.

McClelland's opinion.  Tr. 26.  It is insufficient for the ALJ to reject the opinion of a

treating or examining physician by merely stating, without more, that there is a lack

of objective medical findings in the record to support or that it is inconsistent with

other evidence in the record.  *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

1988).  Defendant's argument involves findings and evidence not discussed by the

ALJ in this context.  ECF No. 15 at 13-14.  The Court is constrained to review only

those reasons asserted by the ALJ.  *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S.

194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).  The

ALJ's reasons for rejecting Dr. McClelland's opinion are legally insufficient.

     *3.  Gabriela Mondragon, MSW*

     Ms. Mondragon completed a DSHS disability documentation form in October

2009 and indicated a diagnosis of major depressive disorder.  Tr. 680-92.  She

opined that Plaintiff's ability to work is limited by poor energy, poor concentration,

limited support system, difficulty staying on task, and difficulty interacting with

others due to depression and severe isolation.  Tr. 680.  She indicated Plaintiff is

limited to working 11-20 hours per week and the limitations would exist for six to

eight months.  Tr. 680-81.  The ALJ gave little weight to Ms. Mondragon's opinion.

Tr. 26.

     First, the ALJ incorporated by reference the reasons for rejecting Ms.

Mondragon's opinion in the 2015 decision, which included the finding that Ms.

Mondragon's opinion was inconsistent with the most recent evidence in the record

ORDER ~ 28

such as her own testimony and self-reports and with the opinion of Dr. Haloman. Tr. 26, 134.  Indeed, Ms. Mondragon's assessment that Plaintiff has poor concentration and difficulty staying on task is inconsistent with Dr. Haloman's opinion that Plaintiff can perform simple, repetitive tasks.  Tr. 624, 680.  Similarly, Ms. Mondragon opined that Plaintiff would have difficulty interacting with others, but Dr. Haloman opined that Plaintiff can interact with coworkers and the public. Tr. 624, 680.

Plaintiff contends this makes "little sense" since the ALJ gave little weight to Dr. Haloman's opinion.  ECF No. 14 at 16.  As discussed *supra*, the ALJ's consideration of Dr. Haloman's opinion is flawed.  Nonetheless, the ALJ accurately found that Ms. Mondragon's opinion is inconsistent with Dr. Haloman's opinion, and the RFC finding includes limitations which are consistent with or more restrictive than this portion of Dr. Haloman's opinion.[8]  Thus, the ALJ's finding regarding Ms. Mondragon's opinion is consistent and supported by substantial evidence.

Plaintiff also argues the ALJ did not explain how her use of relaxation techniques contradicts Ms. Mondragon's opinion.  ECF No. 14 at 16.  However, the

---

[8] The RFC includes limitations of unskilled, repetitive, routine tasks in two-hour increments and superficial, incidental contact with the public and occasional contact with co-workers and supervisors.  Tr. 21.

ORDER ~ 29

ALJ found Ms. Mondragon's opinion regarding a limitation on public interaction is inconsistent with Plaintiff's testimony that she can control her symptoms in public using relaxation techniques. Tr. 74-75, 133. The ALJ's interpretation of the evidence is reasonable and based on the record.

Second, the ALJ observed that Ms. Mondragon's opinion predates the relevant period by nearly four years. Tr. 26. As noted *supra*, the regulations suggest that medical opinion evidence predating the claimant's filing may be relevant. *See* 20 C.F.R.§ 416.912(d). However, evidence pre-dating a claimant's alleged onset date may be of limited relevance in determining whether that claimant is disabled after his alleged onset date. *See Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir.2008) (citation omitted) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Here, Ms. Mondragon's opinion predates both the filing date in 2013 and the alleged onset date in October 2010. The ALJ reasonably found this opinion is of limited relevance. This is a germane reason for giving less weight to the opinion.

Third, the ALJ found Ms. Mondragon's opinion is inconsistent with more recent evidence. Tr. 26. Plaintiff contends this is a conclusory statement, ECF No. 14 at 16, and, indeed, the ALJ failed to specifically identify which recent evidence is inconsistent with Ms. Mondragon's opinion. The ALJ also observed that Ms. Mondragon is not an acceptable medical source, Tr. 133, which is not a valid reason for rejecting an opinion. Nonetheless, the ALJ identified other germane

reasons supported by substantial evidence for giving little weight to the opinion, so any error is harmless. *See Carmickle*, 533 F.3d at 1162.

### 4. Emily Shoemaker, LMFT

In March 2011, Ms. Shoemaker completed a DSHS disability documentation form and indicated a diagnosis of major depression with minor psychotic features. Tr. 689-90. She opined that Plaintiff is limited in the ability to follow simple and complex instructions, concentrate for extended periods of time, and interact with others. Tr. 689. She indicted Plaintiff is limited to working one to ten hours per week and the limitations would exist for six months. Tr. 690.

In June 2011, Ms. Shoemaker completed another DSHS disability documentation form and indicated diagnoses of major depression and panic disorder. Tr. 691, 693. She opined that Plaintiff's ability to work is limited by her ability to follow complex instructions and concentrate on reading materials for extended periods of time. Tr. 691. She indicated that Plaintiff is limited to 11-20 hours of work per week and that the limitations would continue for three to six months. Tr. 693. The ALJ gave little weight to Ms. Shoemaker's opinions. Tr. 26-27.

First, the ALJ observed that Ms. Shoemaker's opinions were generated in June 2010 and March 2011, well before the relevant period starting with Plaintiff's application for benefits in January 2013, and that the opinions provided only temporary work restrictions. Tr. 26. Temporary limitations do not meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less

ORDER ~ 31

than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physician's short-term excuse from work was not indicative of "claimant's long-term functioning").  Because Ms. Shoemaker's opinions indicate limitations lasting for six months or less, the ALJ reasonably found they are of little relevance to Plaintiff's current functioning. Tr. 26-27.  This is a germane reason for giving little weight to the opinion.

Second, the ALJ incorporated by reference the reasons for rejecting Ms. Shoemaker's opinions in the 2015 decision, which include that the opinions are inconsistent with recent evidence in the record such as her own testimony and the opinion of Dr. Haloman.  Tr. 27, 134.  Indeed, Ms. Shoemaker's assessment that Plaintiff is limited in the ability to follow simple and complex instructions, concentrate for extended periods of time, and interact with others, Tr. 689, is contradicted by Dr. Haloman's opinion that Plaintiff can perform simple and repetitive tasks and can interact with coworkers and the public.  Tr. 624.  Ms. Shoemaker opined that Plaintiff cannot perform full-time work, Tr. 690, 693, but Dr. Haloman indicated Plaintiff can maintain regular attendance and complete a normal workday.  Tr. 624.  The ALJ reasonably concluded Ms. Shoemaker's opinion is inconsistent with Dr. Haloman's findings.

The ALJ also observed that Ms. Shoemaker is not an acceptable medical source, Tr. 134.  which is not a valid reason for rejecting an opinion.  To the extent the ALJ rejected Ms. Shoemaker's opinions on that basis, the ALJ erred.  However,

because the ALJ gave other germane reasons supported by substantial evidence for rejecting the opinions, any error is harmless. *See Carmickle*, 533 F.3d at 1162.

**D.    Step Five**

Plaintiff contends the ALJ failed to meet the Commissioner's step-five burden. ECF No. 14 at 4-7. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101.

Here, the vocational expert testified that representative occupations consistent with the RFC include laminating machine offbearer with 130,000 jobs in the national economy and bakery conveyor line worker with 255,000 jobs in the national economy. Tr. 28, 879. On this basis, the ALJ concluded there are a significant number of jobs available in the national economy that Plaintiff could perform. Tr. 28.

Plaintiff contends the vocational expert's explanation of the basis for the number of jobs estimated is not supported by "best methodology practices or

ORDER ~ 33

reality." ECF No. 14 at 5. The vocational expert testified that estimated number of jobs available for each occupation is calculated based on information from the "SOC," Tr. 881, which is the U.S. Bureau of Labor Statistics Standard Occupational Classification system.[9] Plaintiff makes her own calculations of jobs available based on data obtained from the DOT, SOC, and Job Browser Pro software. ECF No. 14 at 6-7.

However, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Although Plaintiff asked the source of data used to calculate the number of jobs, Plaintiff did not challenge the vocational expert's testimony regarding the job data. Tr. 68-73. Thus, this line of argument is waived.

Even if the argument is not waived, a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18. In the absence of any contrary evidence, a vocational expert's

---

[9] The Standard Occupational Classification system is a federal statistical standard used by federal agencies to classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data. *See* www.bls.gov/soc/.

testimony is regarded as inherently reliable.  *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

Furthermore, courts in this circuit considering similar arguments have found that lay assessment of raw data does not rebut a vocational expert's opinion. *Shapiro v. Berryhill*, No. 2:18-CV-01411-DJA, 2020 WL 836830, at *5 (D. Nev. Feb. 20, 2020) (finding Job Browser Pro data "was not presented through an expert source to put the raw data into context" and "is not included in the list of published sources recognized as authoritative by Social Security regulations"); *Jose Alfredo G. v. Saul*, No. 3:19-CV-00852-RBM, 2019 WL 6652086, at *6 (S.D. Cal. Dec. 5, 2019) (finding lay assessments of alternative job data sources alone are insufficient to undermine vocational expert analysis); *Adriana H. v. Saul*, No. 2:18-CV-10246-JC, 2019 WL 5683464, at *9 (C.D. Cal. Oct. 31, 2019) (rejecting challenge to step five finding based on VE testimony when claimant did not provide evidence from a vocational or similar expert explaining or analyzing the new vocational evidence; claimant's "cryptic and confusing lay interpretation of the raw vocational data does not suffice"); *Kirby v. Berryhill*, No. SA CV 18-497-E, 2018 WL 4927107, at *5 (C.D. Cal. Oct. 10, 2018) (citing e.g., *Reguero v. Berryhill*, 2018 WL 1804678, at *5-6 (E.D. Cal. Apr. 13, 2018)) (concluding ALJ was entitled to rely on vocational expert's estimation of job numbers and appropriately resolved any ambiguity in the expert's testimony); *Munroe v. Colvin*, 2014 WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument that vocational expert's estimated 500,000 garment sorter jobs should have been reduced to only 650 jobs, representing a

ORDER ~ 35

subset of jobs within a larger category of "production worker" occupations; court observed that the plaintiff was not a vocational expert and there was no indication she was qualified to assess the data); *see also Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (determining ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a data source listed in the regulations, and the data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony).  Based on the foregoing, the ALJ's reliance on the vocational expert's testimony was appropriate and the step five finding was supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  On remand, the ALJ should reconsider the opinions of Dr. Haloman and Dr. McClelland and provide legally sufficient reasons for rejecting all or any portion of the opinions.  The Court does not direct that these opinions should be credited; only

that the ALJ reconsider them in light of the insufficient findings identified herein.  All other findings by the ALJ are affirmed as discussed herein.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is DENIED.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** April 27, 2020.

_____*s/ Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge

ORDER ~ 37